**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

DERRICK ANDERSON,

                            Plaintiff,          Case No. 26-3850

            - against -

                                        **COMPLAINT**

DOZE INC.,

                            Defendant.

-------------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Derrick Anderson ("Plaintiff" or "Anderson"), brings this action on behalf of himself against Doze Inc. (hereinafter "Doze" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

1

4. Plaintiff brings this civil rights action against Doze for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Doze provides to their non-disabled customers through www.DozeBedding.com (hereinafter "DozeBedding.com" or "the Website"). Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. DozeBedding.com provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs offered by Doze. Yet, DozeBedding.com contains thousands of access barriers that make it difficult if not impossible for blind customers to use the website. In fact, the access barriers make it impossible for blind users to even complete a transaction on the website. Thus, Doze excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with defendant's website and from purchasing goods or services from defendant's website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms,

descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface.  Doze's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on DozeBedding.com.

8. By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA.  Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.  Similarly, New York State law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to 'Take the Quiz' and to make an online purchase of the 'Sateen Fitted Sheets' and the 'Sateen Duvet Covered Set' on DozeBedding.com. However, unless Defendant remedies the numerous access barriers on its website, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction on DozeBedding.com.

11. Because Defendant's website, DozeBedding.com, is not equally accessible to blind consumers, it violates the ADA.  Plaintiff seeks a permanent injunction to cause a change in Doze's policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

<u>**JURISDICTION AND VENUE**</u>

3

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because Plaintiff is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.  See 28 U.S.C. § 133(d)(2).

14. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendant has been conducting business in New York State, including in this District. Defendant purposefully targets and otherwise solicits business from New York State residents through its website and sells its products through many retailers in this District.  Because of this targeting, it is not unusual for Defendant to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District, has been and is violating the rights of consumers in this District, and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the Website.  In *Access Now, Inc. v. Otter Products, LLC* 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim.  Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods*., 280 F.Supp.3d at 294.  This satisfies Due Process because the harm – the barred access to the website – occurred here." *Otter Prods*., 280 F.Supp.3d at 293.  Additionally, in *Access Now, Inc. v. Sportswear, Inc*., No. 17-cv-11211-NMG, 2018 Dist.

4

LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

**PARTIES**

16. Plaintiff, is and has been at all relevant times a resident of Queens County, State of New York.

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff, Derrick Anderson, cannot use a computer without the assistance of screen reader software. Plaintiff has been denied the full enjoyment of the facilities, goods and services of DozeBedding.com as a result of accessibility barriers on DozeBedding.com.

18. Defendant, Doze Inc., is a Florida foreign business corporation doing business in New York State, with a principal place of business located at 1120 Holland Drive, Boca Raton, FL 33487.

19. Doze provides to the public a website known as DozeBedding.com which provides consumers with access to an array of goods and services, including the ability to view the wide range of premium bedding products and other sleep accessories which can be purchased with the click of a mouse, and learn about promotions, among other features. Consumers across the United States use Defendant's website to purchase premium bedding products and other sleep accessories. Defendant's products are sold at many retailers throughout the country including retailers in this district. Defendant maintains dominion and control over how its products are sold at its partner retailers. Defendant's website is a place of public accommodation

within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  *See Victor Andrews v. Blick Art Materials, LLC*, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017).

**<u>NATURE OF THE CASE</u>**

20. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

21. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet.  Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

22. For screen-reading software to function, the information on a website must be capable of being rendered into text.  If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

23. Blind users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them.  Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchase and downloaded screen-reading software program available for blind computer users.

24. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are

accessible. Many Courts have also established WCAG 2.1 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers. Websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

25. Defendant controls and operates DozeBedding.com. in New York State and throughout the United States.

26. DozeBedding.com is a commercial website that offers products and services for online sale. The online store allows the user to browse and view the wide selection of premium bedding products and other sleep accessories offered for sale, make purchases, and perform a variety of other functions.

27. Among the features offered by DozeBedding.com are the following:

(a) Consumers may use the website to connect with Doze on social media, using such sites as Facebook, Twitter, Instagram, and Pinterest;

(b) an online store, allowing customers to purchase premium bedding products and other sleep accessories for delivery to their doorstep; and

7

(c) learning about the products and the company, reading reviews, learning about shipping and return policies, learning about the materials and fabrics, and learning about promotions.

28. This case arises out of Doze's policy and practice of denying the blind access to the goods and services offered by DozeBedding.com. Due to Doze's failure and refusal to remove access barriers to DozeBedding.com, blind individuals have been and are being denied equal access to Doze, as well as to the numerous goods, services and benefits offered to the public through DozeBedding.com.

29. Doze denies the blind access to goods, services and information made available through DozeBedding.com by preventing them from freely navigating DozeBedding.com.

30. DozeBedding.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

31. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on DozeBedding.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind DozeBedding.com customers

8

are unable to determine what is on the website, browse the website or investigate and/or make purchases.

32. DozeBedding.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as DozeBedding.com, these forms include search fields to find products, fields to select size, color, weight, material, and quantity, fields to select add-ons, fields to select method of payment, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information with confidence and security.

33. On DozeBedding.com, Plaintiff is not able to complete a transaction. Specifically, Plaintiff, using JAWS, experienced the following problems when attempting to make a purchase on the Website:

**PROMOTIONAL POP-UP WINDOW:**
When Plaintiff landed on the website, a promotional pop-up appeared offering "Summer Savings 15% Sitewide." The pop-up window was **NOT** announced by the screen reader. The "Summer Savings 15% Sitewide" pop-up was displayed and visually covers the entire screen, but nothing was announced when it appeared. Plaintiff was **UNAWARE** the pop-up had appeared or that it existed at all and consequently, was unable to take advantage of 'sighted-only' promotions.

The pop-up window is **NOT** given focus when it is displayed. Although the promotional pop-up visually hides the rest of the page, focus does not move into it, so Plaintiff could not reach the pop-up contents. Even if Plaintiff was able to reach the promotional pop-up, all Plaintiff would hear is "Modal Overlay Box dialog" with no mention of the promotion or the summer savings discount. Plaintiff was **UNABLE** to access or understand the pop-up.

**NAVIGATION:**
Submenus are **NOT** accessible with the keyboard; mouse hover is required. The "Duvets", "Sheets", and "Accessories" navigation links reveal submenus on mouse hover, but pressing Space or Enter on them does nothing, so the submenus cannot be opened with the keyboard. The links also do not navigate to the "Duvets", "Sheets", or "Accessories" pages, leaving Plaintiff **PREVENTED** from using the navigation menu at all. Consequently, Plaintiff was unable to access a majority of the products offered for sale on the website. This is a critical error.

9

There is **NO** "Search" feature available on the website. Plaintiff was **UNABLE** to find any alternative way to locate internal pages, as the website offers neither a search feature nor a sitemap.

Text and buttons in the announcement region are **NOT** accessible. The announcement region is not defined as a region, landmark, section, or pop-up, so it is difficult to find, and a "Sunny15" button within it is announced with no context about its purpose. Although the region is displayed visually above the header and navigation, it can only be reached just before the footer, which is **ILLOGICAL** and does not match the visual order, making the "Summer sale 15% off sitewide with code" text impossible to find. A close button is also present, but its announcement is generic, so Plaintiff was **UNAWARE** it closes the region or that an announcement region even existed.

There are **NO** controls to pause or stop moving content. The homepage banner video and several other homepage videos begin playing automatically with no way to pause or stop them, and a logo region continuously scrolls with no control to halt it. Plaintiff was **UNABLE** to stop any of the moving or updating content.

The scrolling logo region repeats the same link announcement excessively. As Plaintiff reached the scrolling logo region on the homepage, the region forced them to navigate through every item, taking more than 80 navigation stops to get past it. Throughout, Plaintiff heard "www.dozebedding.com visited same page link" over and over in succession, more than 80 times, before focus finally moves past the content. Plaintiff was **FORCED** to endure the repeated announcements with no way to skip the region.

Color options on collection page product cards are **NOT** accessible with the keyboard. Product cards on the collection pages include color options that can be chosen with a mouse, but those controls do **NOT** receive keyboard focus and are **SKIPPED** over entirely when navigating. Plaintiff was **UNAWARE** the color options existed. With the controls skipped entirely, Plaintiff was **PREVENTED** from interacting with them. This is a critical error.

Filter controls are **NOT** accessible. The filter control is announced as "Filter right same page link", and activating it hides the visible filter section without announcing that it has collapsed or expanded. Activating it again brings the section back, but nothing is announced and the next tab does not move focus into the restored content. Plaintiff was **UNABLE** to understand the control or determine how to reach the filter options.

Carousel product card controls are **NOT** labeled or accessible. Product cards in the carousel contain color option controls announced only as "list item not selected 1 of 5", "list item 2 of 5", and similar, with no color name, no indication they are interactive, and no product name. Every card repeats the same uninformative announcement. Some cards also include size and season dropdowns announced as "list Twin/Twin XL" and "list All-Season" with no indication they are size or type options or that they expand. Plaintiff could not determine what any of these controls were. As a result, Plaintiff was **PREVENTED** from interacting with the carousel content.

**SIZE, COLOR, SUBSCRIPTION, AND QUANTITY:**

Collapsed "details" buttons/tabs are **NOT** accessible on product pages. The "Our Materials are Luxe AF" section uses "texture" and "weave" tab controls that update the content below when activated, but the tabs do **NOT** receive keyboard focus and require a mouse to operate. Plaintiff

was **UNABLE** to switch tabs or reach the associated product information. This is a critical error.

Size options are **NOT** accessible. The size options are announced as "Twin radio button checked required 1 of 6", and similar, with no group label or context indicating they are size selections. The visual "Size" text beside the controls is **NOT** announced or associated with the radio buttons, leaving Plaintiff **UNAWARE** these were size options.

Color options are **NOT** accessible. The color options are announced as "Snow radio button checked required 1 of 5", and similar, with no group label or context indicating they are color selections. The visual "Color" text beside the controls is **NOT** announced or associated with the radio buttons, leaving Plaintiff **UNAWARE** these were color options.

The "plus" and "minus" buttons for adjusting quantity are **INCORRECTLY** labeled. The quantity controls are announced as "Plus graphic same page link" and "Minus graphic same page link", with no context that they adjust quantity and no quantity label. Plaintiff was **UNAWARE** these were quantity controls.

There is **NO** verbal notification given when quantity is adjusted with the "plus" or "minus" buttons. When the quantity controls are activated, nothing is announced. No notification confirms that the quantity has changed or that any action has taken place, leaving Plaintiff **UNABLE** to determine whether the adjustment succeeded.

Price information is **NOT** accessible. The sale and regular prices are announced together as "From$476.25$635.00Sale", with no separation or indication of which value is current. The $635.00 price is crossed out visually to show that the lower price is the sale price, but there is no equivalent conveyed to screen readers, so Plaintiff could **NOT** determine which price was the current price.

**ADDING TO CART/NAVIGATING THE CART:**
Non-interactive content in the cart pop-up receives focus. When navigating the cart pop-up, focus lands on numerous non-interactive elements, beginning with a "100 Congrats! You've unlocked free shipping! progress bar" that cannot be acted on. The cart items are then announced as a single continuous block, for example "View details for Sateen Duvet Cover Set visited link Sateen Duvet Cover Set heading clickable level 5 Twin/Twin XL / Snow Remove ... Decrease quantity ... Increase quantity ... Price$290.00", running each item together. The announcement is confusing and disorienting, and Plaintiff was **UNABLE** to determine what was interactive and what was not.

**CHECKOUT PROCESS:**
The "Discount code" input field does **NOT** receive focus until after the "Pay Now" button and additional links (Terms of Service, Privacy Policy, etc.) which usually signify the end of a page. It is **UNLIKELY** that a screen reader user would complete the required checkout fields and then continue navigating past the "Pay Now" button and multiple footer links to find this additional field.

Express Checkout buttons on the checkout page are **SKIPPED** over when the page loads. Plaintiff's focus moves into the email input field **WITHOUT** informing Plaintiff of the alternative checkout options. Plaintiff was **UNAWARE** that these checkout options existed.

**QUIZ:**

The "Skip to Content" link does **NOT** work while the quiz is active. Plaintiff tried to use the "Skip to Content" link during the quiz to bypass the repeated header and navigation content, but activating it produced no result. Plaintiff could **NOT** skip past that content while the quiz was active.

Quiz answer options are **NOT** associated with their question. The answer buttons for the first quiz question are announced as "Duvet insert button", "Duvet cover button", "Sheets button", and similar, with no connection to the question "What are you shopping for today?", and the selected option is never announced, nor is anything announced when a selection is made. The "Next" button also appears before the answer buttons rather than after them, which is **ILLOGICAL**. When "Next" is activated, nothing is announced to indicate that the next question has appeared or that content has updated. Plaintiff could **NOT** tell what they were answering or whether the quiz was progressing.

Quiz answer options after the first question are **NOT** labeled. Beginning with the "Who shares your bed?" question, the answer buttons are all announced as "Open Next Modal Page button" with no label or context about what each option is. With every button announced identically and meaninglessly, Plaintiff was **UNABLE** to choose an answer and could not proceed with the quiz.

Consequently, Plaintiff was essentially prevented from completing a transaction on the Website.

34. Furthermore, DozeBedding.com lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on DozeBedding.com's menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a purchase, he was unable to access it completely.

35. Furthermore, Plaintiff is unable to locate the shopping cart because the shopping cart form does not specify the purpose of the cart. As a result, blind customers are denied access to the shopping cart. Consequently, Plaintiff was unsuccessful in adding products into his shopping cart and are essentially prevented from purchasing items on DozeBedding.com.

12

36. Moreover, the lack of navigation links on Defendant's website makes attempting to navigate through DozeBedding.com even more time consuming and confusing for Plaintiff and blind consumers.

37. DozeBedding.com requires the use of a mouse to complete a transaction.  Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another.  Thus, DozeBedding.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on DozeBedding.com.

38. Due to DozeBedding.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers.  Some blind customers may require a driver to get to the stores or require assistance in navigating the stores.  By contrast, if DozeBedding.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do.  According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendant's website in an attempt to reach the desired service.  Thus, DozeBedding.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases on DozeBedding.com.

39. DozeBedding.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use DozeBedding.com and who would otherwise be able to fully and equally enjoy the benefits and services of DozeBedding.com in New York State and throughout the United States.

40. Plaintiff, Derrick Anderson, has made numerous attempts to complete a purchase on DozeBedding.com, most recently on May 25, 2026; June 2, 2026; and June 11, 2026, but was unable to do so independently because of the many access barriers on Defendant's website. These access barriers have caused DozeBedding.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to 'Take the Quiz' and to make an online purchase of the 'Sateen Fitted Sheets' and the 'Sateen Duvet Covered Set' on Defendant's website. Moreover, if Defendant removes the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to inquire about and purchase new and additional premium bedding products and other sleep accessories for delivery to his doorstep. Just because you're blind doesn't mean you can't be comfortable. Plaintiff enjoys the luxurious feeling of high-quality bedding. As a blind person, he is sensitive to certain fabrics and textures, and that affects his life especially when he is trying to wind down and fall asleep. Consequently, Plaintiff tries to shop for bedding that he knows will be comfortable for him. However, finding and purchasing the right bedding in physical stores is a problem for Plaintiff, as a blind person. Figuring out a commute to a home goods store, navigating around crowded aisles with other customers, and finally selecting the right products among the countless options all pose special hardships for Plaintiff. Because of this, Plaintiff prefers to shop online, where he can access relevant product information and have products delivered directly to his home. Like most blind people, Plaintiff relies on television and social media for product recommendations. While

14

listening to the popular ABC television program, The View, Plaintiff came across Defendant's brand. After hearing about Defendant's brand the first time, he noticed Defendant's brand on his social media feeds. Plaintiff loved that Defendant's duvets are specially engineered to ensure that making a bed using Defendant's products is easier and more effective than any other duvet system on the market; Defendant's duvets feature a three-sided zipper and snap corners that completely eliminate the hassle of stuffing and bunching. These features are particularly appealing to Plaintiff because they eliminate a common problem that he has using any other duvet. Making his bed with a duvet has always been an additional struggle because of his blindness, so Plaintiff thought that Defendant's uniquely convenient duvet system would be perfect for him. Plaintiff also loved that Defendant's products are made with luxury materials and weaves, which ensure that Plaintiff will feel comfortable while he sleeps. This is extremely important to him because as a result of his blindness, Plaintiff is particularly sensitive to textures, fabrics, and materials. As such, Plaintiff was eager to make a purchase on Defendant's website. Plaintiff sought to purchase directly from Defendant's website because it offers Defendant's complete product line, ensures product authenticity, and gives Plaintiff access to deals, bundles, and offers that he cannot find elsewhere. Unfortunately, Defendant's website was not accessible and continues to be inaccessible, thereby deterring Plaintiff from making purchases on the site. If the website were accessible to the blind and Plaintiff were not deterred from returning, he would be able to complete the purchases he originally intended to make and return regularly to Defendant's website to purchase bedding in more colors, weaves, and styles to accommodate his bedroom for different seasons. Moreover, Plaintiff would like to return to explore the other products currently on Defendant's site, as well as the products that Defendant will release in the future, as Defendant regularly updates their website with new products. He would also like to purchase Defendant's bedding for loved ones because he knows many people that would be

15

interested in Defendant's bedding and sleep accessories. Plaintiff is especially interested in returning to Defendant's website to purchase the 'Percale Pillowcase Set.' Plaintiff has purchased bedding from other (accessible) online vendors in the past, but Defendant's products are the only ones with their proprietary duvet design, which makes using their products uniquely simple and effective for Plaintiff when he makes his bed. This sets Defendant apart from competitors. Plaintiff intends to return to Defendant's website once it becomes accessible so that he can make future purchases and fully experience the variety of products Defendant offers. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortar locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc*., 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc*., 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether an ADA website accessibility complaint properly allege whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during May and June 2026 without success and will definitely make purchases of new and additional products which are sold on the website and which currently cannot be purchased by blind persons.

16

41. As described above, Plaintiff has actual knowledge of the fact that Defendant's website, DozeBedding.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

42. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of DozeBedding.com.

43. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff.

44. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

45. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of DozeBedding.com, Plaintiff suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

### FIRST CAUSE OF ACTION
(Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act)

46. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 of this Complaint as though set forth at length herein.

47. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full

17

and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability."  42 U.S.C. § 12181(b)(2)(D)(I).

48. DozeBedding.com is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7).

49. Defendant is subject to Title III of the ADA because it owns and operates DozeBedding.com.

50. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

51. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

18

53. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text.  Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

55. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder.  Patrons of Doze who are blind have been denied full and equal access to DozeBedding.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

56. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

57. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of

DozeBedding.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

58. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

58. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

60. Plaintiff is also entitled to reasonable attorneys' fees and costs.

61. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
(Declaratory Relief)

62. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 101 of this Complaint as though set forth at length herein.

63. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that DozeBedding.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of DozeBedding.com, which Doze owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*. prohibiting discrimination against the blind.

64. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and against the Defendants as follows:

20

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, DozeBedding.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that DozeBedding.com is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, DozeBedding.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*;

d) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights under the ADA;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
June 26, 2026

SHAKED LAW GROUP, P.C.
Attorneys for Plaintiff

By:*/s/Dan Shaked*
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
e-mail: ShakedLawGroup@Gmail.com

21